# EXHIBIT B

CONFIDENTIAL BINDING TERM SHEET

PROPOSED INVESTMENT ARRANGEMENT

March 17, 2012

This Confidential Binding Term Sheet (this "**Term Sheet**") sets forth the principal terms of the proposed investment arrangement between ANUBODY MD LLC, an Illinois limited liability company (the "**Company**"), and SHLOMO RECHNITZ, an individual, or an entity he designates for the investment contemplated by this Term Sheet (in either case, "**Investor**"). For purposes of this Term Sheet, the Company and the Investor may be referred to individually as a "**Party**," and collectively as the "**Parties**."

| | |
|---|---|
| **Company Information:** | The Company was founded on August 22, 2011. The Company's specific business purpose is to enhance and optimize the physical and mental well-being of its clients, primarily men and women over the age of 30, by customizing a treatment regimen to reflect their personal health goals. This treatment regimen is founded on the application of advanced medical technologies, and it utilizes the latest in youthful aging and integrative principles, incorporating bio identical hormone replacement, weight-loss and diet with exercise. The Company will initially operate from a facility located at 1851 West Grand Avenue, in Chicago, Illinois. |
| **Term Sheet Purpose:** | The Company is seeking $125,000.00 in investment financing in order to fund its working capital needs. Investor has agreed to invest such sum in the Companies location 1851 West Grand Avenue. The Parties are entering into this Term Sheet in order to set forth the principal terms and conditions of Investor's proposed investment in the Company, which principal terms and conditions will be incorporated into the Company's Operating Agreement. |
| **Investment:** | Investor agrees to invest in the Company the sum of $125,000.00. In consideration of the Investment the Company will issue to Investor a 50% membership interest in the Company's location at 1851 West Grand Avenue Chicago, Il (the "**Interest**"). Investor will be entitled to a recoupment of his investment out of the distribution of any net profits. Thereafter, net profits shall be distributed in the percentages set forth in the next section. The managers shall determine the amount of any reasonable reserves to be maintained in the Company and the amount of any net profits to be distributed, which shall be distributed quarterly. |

| | |
|---|---|
| **Capital Structure:** | Upon the Company's issuance of the Interest to Investor, Investor shall own a 50% membership interest in the Company, and each of Patrick Farah ("**Patrick**") and Daniel Gallagher ("**Daniel**") shall own a 25% membership interest in the Company. |
| **Management Structure:** | Patrick and Daniel shall be the managers of the Company, and in such capacities, Patrick and Daniel shall have the power and authority to manage all of the Company's day-to-day business and affairs and to exercise all of the Company's powers; <u>provided, however</u>, that pursuant to the Operating Agreement (as defined below), certain actions shall require Investor's approval, as further set forth in the Approval Rights section below. Patrick and Daniel shall each serve as manager until his death, disability, resignation or removal for "Cause" (as that term will be defined in the Operating Agreement). |
| **Approval Rights:** | Without Investor's advance written consent or approval, neither Patrick or Daniel, in their capacity as a manager of the Company, nor any of the Company's members, have the right, power or authority to do, or to cause or bind the Company to do, any of the following: |

(i)     Admit new members to the Company, or cause the Company to issue additional equity to any third party or to an existing member;

(ii)    Approve any transfer of all or any portion of a member's membership interest in the Company;

(iii)   Set, increase or decrease the compensation paid to any manager of the Company;

(iv)   Fill a manager vacancy;

(v)    Incur any debt or liability obligating the Company to pay more than $5,000.00, which is outside the ordinary course of the Company's business;

(vi)   Hire employees or engage the services of other third parties to provide services for or on behalf of the Company for scheduled compensation in excess of $50,000.00 per year, or otherwise establish compensation arrangements for executive employees of the Company in excess of such amount;

(vii)   Amend the Operating Agreement or any of the Company's organizational documents;

(viii)  Mortgage, pledge or otherwise encumber any asset of the Company;

(ix)   Cause or permit the Company to enter into any business transaction or arrangement with a manager, a member or any entity with which a manager or a member is principally affiliated;

(x)    Cause or permit (a) the merger or consolidation of the Company with another entity, (b) the dissolution or liquidation of the Company, or (c) the conversion of the Company into another form of business entity;

(xi)   Sell or otherwise dispose of all, or substantially all, of the assets of the Company; or

(xii)  Engage in any act, transaction or reorganization that would cause the Company to be classified as other than a partnership for federal income tax purposes.

**Compliance with Laws:** The Company's business shall at all times be managed, operated and conducted in strict compliance with all applicable federal, state and local laws, regulations, codes and ordinances, and all applicable licensing, permitting, approval, authorization and registration requirements of any governmental agency or under any such laws, regulations, codes and ordinances, including any medical licensing requirements.

**Other Investor Rights:** Investor shall be entitled, in Investor's sole discretion, to exercise any one or more of the following rights and/or privileges in connection with Investor's investment in the Company:

(i)    Investor shall have the right to exchange the Interest in kind in the event that the Company issues additional equity in the Company which has rights superior to the Interest;

(ii)   Investor shall have the first right of refusal to participate in the Company's issuance of any additional equity in the Company;\

    (iii)    Investor shall have the pre-emptive right to maintain Investor's proportionate interest in the Company, at a mutually-agreed upon discount, upon the Company's undertaking future rounds of investment financing;

    (iv)    Investor shall have the first right of refusal that is comparable to the rights granted to Patrick and Daniel upon the occurrence of a Buyout Event (as defined below);

    (v)    In addition to the audit and inspection rights granted to members of the Company pursuant to the Illinois Limited Liability Company Act, Investor shall have the rights to inspect, audit and copy the Company's books of account and records of its business, at any time and from time to time, with such rights being comparable to the rights of Patrick and/or Daniel to undertake the same.

    (vi)    Investor shall have "tag-along" rights in the event of a proposed sale by Patrick and Daniel of a substantial portion of their membership interests in the Company; and

    (vii)    Investor shall have the option, to be exercised on thirty (30) days prior written notice, to invest in any future locations which Patrick and/or Daniel propose to launch for purposes of operating a business similar to the Company's business, with the terms of such investment to be negotiated in good faith between the Parties; provided, however, that in any event, with respect to each such investment, distributions of available cash from operations shall be made in accordance with the following order of priority:

        (a)    first, to Investor until Investor has received aggregate available cash equal to a preferred return of Fifteen Percent (15%) on Investor's unrecouped investment;

        (b)    second, to Investor until Investor has received aggregate available cash equal to Investor's unrecouped investment; and

        (c)    thereafter, Fifty Percent (50%) to Investor and Fifty Percent (50%) to all other members, (Patrick Farah and Daniel Gallagher) in the aggregate.

**Operating Agreement:**    Upon the Parties execution and delivery of this Term Sheet, the Parties shall cause the preparation of the Company's Operating Agreement, which shall incorporate the terms set forth in this Term

951700.1

|  |  |
|---|---|
|  | Sheet and such other terms as the Parties shall in good faith negotiate and determine (the **"Operating Agreement"**). |
| **Other Operating Agreement Provisions:** | Without limiting the generality the foregoing, the Operating Agreement shall include the following: (i) restrictions on a member's ability to transfer all or any portion of his, her or its membership interest in the Company; (ii) a buyout option, first in favor of Investor and the other members, on pro rata basis, and thereafter in favor of the Company, upon the occurrence of certain events with regard to a member (each, a **"Buyout Event"**), including death, disability, withdrawal, retirement, resignation, bankruptcy, termination, or transfer or attempted transfer of a membership interest in violation of the terms of the Operating Agreement; and (iii) standard and customary allocation provisions. |
| **Indemnification:** | To the fullest extent permitted by law, the Company shall indemnify, defend, protect and hold harmless Investor, and each of his respective partners, shareholders, members, controlling persons, directors, officers, managers, heirs, trustees, beneficiaries, administrators, executors, employees, contractors, agents, representatives, successors and assigns, from and against any and all demands, judgments, settlements, penalties, claims, lawsuits, liabilities, damages, costs, losses, expenses, obligations and fines, including reasonable attorneys', accountants' and other professional fees, costs and expenses, that such indemnified party may suffer or incur by reason of or in connection with his, her or its ownership interest in, or affiliation with, the Company. |
| **Limitation of Liability:** | The Company's debts, obligations and liabilities shall be solely the Company's debts, obligations and liabilities, and Investor shall not be obligated personally for any such debt, obligation or liability solely by reason of being or having been a member of the Company. |
| **Confidentiality:** | The Parties agree to keep confidential and to refrain from disclosing to any person or entity (a) the scope, nature, substance or status of the negotiations between the Parties, or (b) the existence or contents of this Term Sheet, until such time as the Parties agree in good faith that disclosure is appropriate, except that a Party may disclose such matters to its directors, members, managers, officers, employees, lawyers, agents, representatives and accountants. |
| **Miscellaneous:** | This Term Sheet will be governed by and construed in accordance |

951700.1

5

with the laws of the State of Illinois (without regard to conflicts of law principles), and the Parties hereby consent to the jurisdiction of Illinois state courts or federal courts located within Cook County, Illinois over all matters relating to the Term Sheet.

This Term Sheet may not be amended, modified or supplemented except pursuant to an instrument in writing signed by all of the Parties. This Term Sheet contains the entire agreement among the Parties with respect the subject matter hereof and supersedes all prior agreements or understandings among the Parties with respect thereto.

\* \* \*

This Term Sheet is intended to set forth the principal terms of the Parties' agreement with regard to the subject matter of this Term Sheet. As a result, this Term Sheet constitutes a formal binding agreement with respect to the terms set forth herein. However, the Parties intend to use this Term Sheet as the basis for the preparation of definitive documents necessary to effectuate the investment arrangement contemplated hereby, including the Operating Agreement. The Parties agree to negotiate in good faith regarding the remaining terms and provisions of these definitive documents. Nonetheless, the Parties intend that the legal rights and obligations of and between the Parties with respect to the terms and provisions set forth in this Term Sheet shall come into existence promptly upon execution and delivery of this Term Sheet.

When signed by the Parties, this Term Sheet will comprise a legally binding agreement between the Parties.

"**Company**"                                                         "**Investor**"

ANUBODY MD LLC                                              HRT Chicago Investments, LLC

By: _____/s/_____                                             _____/s/_____
    Patrick Farah, Manager                                    SHLOMO RECHNITZ

By: _____/s/_____
    Daniel Gallagher, Manager

951700.1

6